25CA1396 Marriage of Allison 08-06-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA1396
City and County of Broomfield District Court No. 23DR30140
Honorable Jeffrey Smith, Judge

In re the Marriage of

Lindsay Marie Allison,

Appellee,

and

David Mitchell Allison Jr.,

Appellant.

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE MEIRINK
Pawar and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced August 6, 2026

Gem Family Law, LLC, Ashley G. Emerson, Mary L. Walsh, Denver, Colorado, for Appellee

Hampton & Pigott LLP, David J. Pigott, Natalie T. Chase, Broomfield, Colorado, for Appellant

¶ 1    In this dissolution of marriage proceeding, David Mitchell Allison Jr. (husband), appeals the property division portion of the district court's permanent orders.  We affirm.

## I.    Background

¶ 2    Husband and Lindsay Marie Allison (wife) were married for seventeen years and have two children.  Husband entered the marriage with a business valued at more than $5 million and a 10,000 square-foot home (Augusta Drive) valued at nearly $2 million.  Prior to the marriage, wife quit her job at husband's request and helped him manage his company's website.  Wife moved into Augusta Drive with husband and began managing the house so that husband could focus on his business.  Husband was the primary source of income while wife was a homemaker and home schooled the children from the time the older child was three.  Husband sold his business in 2023, and wife filed to dissolve their marriage shortly thereafter in October 2023.  Both parties were unemployed at the time of dissolution.

¶ 3    The court valued the marital estate at more than $20 million.  It was comprised of Augusta Drive (the family's primary residence), a second home (Sunflower Street), three vehicles, several accounts,

and other assets. Prior to trial, the parties stipulated that husband would be awarded Augusta Drive and Sunflower Street.

¶ 4 After a two-day permanent orders hearing, the court made the following findings and allocations of property in its permanent orders:

- It awarded husband Augusta Drive and Sunflower Street.

- It accepted wife's valuation of Sunflower Street at $673,160, based on the county assessor's property tax valuation.

- It divided the marital estate equally, with each spouse receiving $10,145,528.

- It ordered wife to pay husband an equalization payment of $41,147.

¶ 5 Husband moved for relief under C.R.C.P. 59, asking the court, in relevant part, to (1) consider the liquidity and tax consequences of the court's equal division of the marital estate; (2) find that husband agreed to receive Sunflower Street only at his offered valuation amount; and (3) modify Sunflower Street's value to reflect his valuation of $600,000. The court denied husband's requests, finding that (1) he didn't present evidence at the hearing about the

liquidity or tax consequences of the assets he was allocated; (2) the record didn't indicate that husband conditioned his acceptance of Sunflower Street on the court valuing the property at $600,000; and (3) the court made sufficient findings to support Sunflower Street's valuation.

## II.    Analysis

¶ 6     Though husband raises several issues on appeal, he makes two overarching arguments: (1) the court didn't follow section 14-10-113, C.R.S. 2025, which requires consideration of the relevant statutory factors to equitably divide marital property; and (2) the court erred by limiting his rebuttal witness's testimony, which prevented him from presenting evidence relevant to contest wife's evidence on spousal contribution.

### A.    The District Court Equitably Divided the Marital Estate Under Section 14-10-113

¶ 7     Husband argues that the court erred by dividing the marital estate 50-50, rather than applying section 14-10-113(1) to divide it equitably, as the statute requires.  Husband asserts that the court didn't make specific findings on the relevant statutory factors

because (1) it didn't categorize property as marital or separate;[1]
(2) it erred by finding that wife contributed as much to the marriage
as husband; and (3) it didn't consider the economic circumstances
of the parties. We disagree with and address each assertion in
turn.

## 1. Legal Framework

¶ 8    Section 14-10-113 requires a multistep analysis in which the
court must first determine "whether an interest constitutes
property," and, if it does, whether that property is separate or
marital. *LaFleur v. Pyfer*, 2021 CO 3, ¶ 63 (quoting *In re Marriage of
Balanson*, 25 P.3d 28, 38 (Colo. 2001)); *In re Marriage of Cardona*,
2014 CO 3, ¶ 12.

¶ 9    The dispute here doesn't concern the division of separate
property but the division of marital property. Under section 14-10-

---

[1] In his opening brief, husband contends that the court erred by not
categorizing his premarital assets, including his business and real
estate interests, as separate or marital property before dividing the
marital estate. But in his reply brief, husband clarifies that his
argument isn't that the court should have awarded him the real
estate interests or his business interests as separate property;
instead, he argues that the court didn't consider his premarital
capital as a contribution under section 14-10-113(1)(a), C.R.S.
2025. We consider husband's contribution assertion *infra* Part
II.A.2.

4

113(1)(a)-(d), the court must value marital property and distribute it equitably after considering the following statutory factors: (1) each spouse's contribution to the acquisition of marital property including as a homemaker; (2) the economic circumstances of the spouses at the time of the division; (3) the value of the property set apart to each spouse; and (4) any changes in the value of each spouse's separate property during the marriage. *LaFleur*, ¶ 62; *Cardona*, ¶ 11. The court isn't "required to make specific findings as to each statutory factor; its findings need only be sufficient to allow us to determine whether its allocation of the marital estate is supported by competent evidence." *In re Marriage of Smith*, 2024 COA 95, ¶ 71.

¶ 10 The weight afforded these factors is within the discretion of the district court, *In re Marriage of Burford*, 26 P.3d 550, 556 (Colo. App. 2001), and the court is afforded "great latitude to equitably divide the marital estate based on the facts and circumstances of the case," *Smith*, ¶ 64. We won't disturb the court's division of the marital estate unless the court abused its discretion. *In re Marriage of Collins*, 2023 COA 116M, ¶ 19. A court abuses its discretion when its ruling is manifestly arbitrary, unfair, or unreasonable or

when the court misapplies the law. *In re Marriage of Nevedrova*, 2024 COA 112, ¶ 6.

### 2. The Court Properly Considered Each Spouse's Contribution

¶ 11 Husband argues that the court's finding that wife contributed as much to the marriage as he did is unsupported because the record established husband's "overwhelming financial contribution," wife's "minimal direct contributions," and wife's reliance on paid staff for the contributions that the court attributed to her. We disagree.

### a. Additional Applicable Law and Standard of Review

¶ 12 A court must consider the contributions of each spouse to the acquisition of marital property, "including the contribution of a spouse as homemaker." § 14-10-113(1)(a). It is "proper for the trial court to consider contributions of parties to the increase in or accumulation of assets by means other than direct contribution of capital." *Thompson v. Thompson*, 489 P.2d 1062, 1064 (Colo. App. 1971). And while noneconomic contributions are of a different character, that doesn't mean that they are any less important to the acquisition and growth of the marital estate. *See Smith*, ¶ 67. We

defer to the court's findings of fact unless they aren't supported by the record. *In re Marriage of Dean*, 2017 COA 51, ¶ 8.

### b. Analysis

¶ 13　Husband argues that, based on the parties' contributions, an equal property distribution was inequitable because (1) he was the sole wage earner during their marriage (apart from a brief period when wife assisted husband with his company's website), and (2) wife outsourced her homemaking tasks to staff.

¶ 14　The court recognized that husband "generated the funds used to acquire most, if not all, of the marital assets" and was "undoubtedly . . . the breadwinner for the family." It also found that husband came into the marriage with approximately $7 million — on the date of marriage, Augusta Drive (husband's premarital home) was worth $1.8 million, and his business was worth $5 million. The court also found that husband had invested his premarital earnings to build the marital estate.

¶ 15　The court acknowledged husband's contribution as the sole provider for the family but explicitly found that wife contributed just as much to the marriage, albeit in a noneconomic capacity, through her care for the children and her other responsibilities. Specifically,

it found that wife was "the primary parent raising the parties' children" and that she was "charged with educating the children," who had been home schooled their entire lives. Further, the older child was diagnosed with dyslexia, speech apyrexia, and ADHD, which wife testified presented "special needs around [his] schooling that . . . required a lot of attention" from her.

¶ 16 Wife testified that the parties employed an au pair to assist with the older child's schooling needs and that they hired chefs, gardeners, and a household manager to help her manage the home because husband didn't assist with the household. Dr. Edward Budd, the court-appointed parental responsibilities evaluator, also testified that husband ceded the overwhelming majority of responsibility for the children's care to wife and that others Dr. Budd interviewed indicated that wife "basically functioned as a single mother" because husband wasn't involved in the mundane aspects of parenting or any of the "grunt" work. Although the parties had paid staff, the court found that "[w]ife remained an involved parent and spouse" and that hiring staff for household tasks allowed her to focus on the older child's needs and to provide individualized attention to the children.

¶ 17    While husband believes that the district court should've placed greater weight on his financial contributions, that's not what the statute calls for.  Section 14-10-113(1)(a) requires the court to weigh each spouse's contribution — including noneconomic contributions as a homemaker — to the growth of the marital estate.  The court's findings, which are supported by the record, demonstrate that it weighed the parties' relative contributions during the marriage and determined an equitable allocation of the marital estate.  *See In re Marriage of Wiggs*, 2025 COA 10, ¶ 45 ("[T]he weight to be afforded evidence is a matter within the sole discretion of the district court."); *Collins*, ¶ 23 (the district court has discretion to weigh the relevant factors including contribution).[2]

---

[2] We would be remiss if we didn't admonish husband's counsel for remarking during oral argument that homeschooling is a "hobby" akin to volunteering or recreational pursuits like golf.  Such statements disserve the parties and debase the legal profession and the legal system.  *See Martin v. Essrig*, 277 P.3d 857, 860 (Colo. App. 2011) ("Lawyers are not free, like loose cannons, to fire at will upon any target of opportunity which appears on the legal landscape.  The practice of law is not and cannot be a free fire zone." (citation omitted)).

### 3. The Court Properly Considered the Parties' Economic Circumstances

¶ 18    Husband argues that the court failed to consider or make specific findings on the economic circumstances of each spouse as required by section 14-10-113(1)(c). In support, he asserts that the court didn't consider the financial burden of having to maintain Sunflower Street and Augusta Drive or the illiquidity of real estate and tax consequences of its property allocations.

#### a. Additional Applicable Law and Standard of Review

¶ 19    The district court must consider the economic circumstances of each spouse "at the time the division of property is to become effective." *In re Marriage of Wells*, 850 P.2d 694, 696 (Colo. 1993) (quoting § 14-10-113(1)(c)). But the district court has great latitude in dividing the marital estate, and we won't disturb the division absent an abuse of discretion. *Smith*, ¶¶ 64-65.

#### b. Analysis

¶ 20    Husband asserts that, having decided to divide the marital estate equally, the court was required to consider liquidity, carrying costs, and the economic ramifications of assigning specific assets to the parties. It also had to assess the parties' earning capacity,

present and future financial needs, and the practical effect of its allocation. Husband claims the court failed to do so when it allocated assets to him that were illiquid and expensive to maintain, while awarding wife liquid, income-producing assets. We disagree for several reasons.

¶ 21 First, contrary to husband's argument, the court did consider liquidity and expense when dividing the marital estate. Indeed, it acknowledged that wife's allocation could "be easily liquidated to cash" and that "[h]usband's assets [we]re slightly less liquid since he received two houses." But, as the court pointed out in its post-trial order, husband didn't provide specific evidence during the dissolution hearing on tax consequences or liquidity that would've allowed the court to assess the qualitative differences, if any, to the way in which it allocated the assets. Moreover, husband's arguments before the permanent orders were entered were inconsistent with those that he raised in his C.R.C.P. 59 motion when he sought to have some of the illiquid assets awarded to wife. The court saw no reason to amend its findings based on evidence that husband could have presented — but failed to present — at the hearing.

¶ 22    Second, the court considered each party's gross income, based on the monthly amount the parties agreed to draw from their investment income during the proceedings.  Similarly, the court's permanent orders stated that both husband and wife were leaving the marriage with over $10 million in assets and could afford to pay their individual expenses.  Wife received $9,245,797.48 in investment accounts, but husband received $1,787,211.13 of the investment accounts and over $1 million more than wife in retirement accounts.  While the court awarded wife most of the investment accounts, husband wasn't left without access to liquid funds.  He received $81,354.38 of the marital bank accounts — while wife received $12,724.00 — and over $7 million in assets excluding the real property.  We conclude this allocation doesn't rise to the level of manifest unfairness.

¶ 23    Third, the parties stipulated that husband would receive Sunflower Street and Augusta Drive.  The agreement was reflected in the parties' amended joint trial management certificate and the parties' property division spreadsheet, and the award was undisputed at trial.  Although husband testified that both parties should have a "fair amount of liquidity," he didn't indicate a desire

12

to modify the stipulation, voice his concerns that an award of real estate was illiquid and expensive to maintain, or point to any other indication that his stipulation was conditional.

¶ 24    The court was within its discretion to follow this stipulation and award husband Sunflower Street and Augusta Drive.  Although husband argued in his C.R.C.P. 59 motion that the properties were forced upon him, that argument was contrary to his prior stipulation, and his stipulation was unconditional.  *See Roberts v. Am. Fam. Mut. Ins. Co.*, 144 P.3d 546, 549 (Colo. 2006) ("[A] party may . . . be estopped from asserting on appeal a position contrary to one he took at trial . . . .").

¶ 25    Husband claims that "the inequity of [the real property] allocation is further magnified by the undisputed fact that [he] did not seek to retain . . . Sunflower Street" and "expressly objected" to wife's proposed valuation of the property.  Despite his objections, he argues that the court "compelled him to accept the Sunflower [Street] property" at wife's valuation without addressing his concerns regarding that valuation.

¶ 26    Husband's argument is misguided.  When valuing property, the court may adopt the valuation of one party over the other, or it

may make its own valuation. *In re Marriage of Medeiros*, 2023 COA 42M, ¶ 41. Here, the court adopted wife's valuation of $673,160, which, as the court explained, was "based on the county assessor's valuation for property tax purposes," over husband's $600,000 valuation, which was based on a value generated by Zillow.com. Husband didn't present evidence on Zillow's methodology, whereas wife presented evidence that the county assessor's valuation was based on a market approach. *See In re Marriage of Krejci*, 2013 COA 6, ¶ 23 ("The parties must present the court with sufficient data to make a reasonable valuation; any failure to do so does not provide grounds for reversal."). We see no reason to disturb the court's valuation of Sunflower Street. *See id.* (valuing property is a factual determination within the discretion of the trial court, which won't be disturbed "if it is reasonable in light of the evidence as a whole").

¶ 27 Finally, husband argues that the court failed to account for the parties' relative earning capacity and educational background, including the fact that wife holds a college degree while husband doesn't. In support, he cites *In re Marriage of Faulkner*, 652 P.2d 572, 574 (Colo. 1982), which held that a court may consider a

14

spouse's earning capabilities when determining a fair property distribution. Husband's reliance on *Faulkner* is misplaced; the supreme court noted that a court *may* consider a spouse's earning capabilities as part of the parties' economic circumstances, not that it must do so. *Id.* Recall that the court need not make findings as to each statutory factor. Rather, "its findings need only be sufficient to allow us to determine whether its allocation of the marital estate is supported by competent evidence." *Smith*, ¶ 71. The court's findings, contained in a thorough forty-one-page order, are supported by competent evidence and show that it considered the economic circumstances of each spouse.

¶ 28    In sum, the court considered the relevant statutory factors as required by section 14-10-113 when dividing the marital estate, and it didn't abuse its discretion by making a 50-50 distribution.

## B.    Rebuttal Witness

¶ 29    Husband contends that the court erred by limiting rebuttal testimony from the house manager because it prevented husband from presenting evidence relevant to the central disputed issue —

15

whether wife contributed equally to the marriage by personally performing the homemaking work.[3]  We disagree.

### 1.  Applicable Law and Standard of Review

¶ 30    Generally, lay witness testimony must be disclosed sixty-three days before the permanent orders hearing.  C.R.C.P. 16.2(e)(3).  Disclosure is required to protect each party from undue surprise and to give each the opportunity to prepare adequately for trial.  *Freedman v. Kaiser Found. Health Plan of Colo.*, 849 P.2d 811, 815 (Colo. App. 1992).  Thus, "[i]f a party attempts to call a witness . . . that the party has not disclosed . . . , the court may exclude that witness . . . absent good cause for the omission."  C.R.C.P. 16.2(j).  However, the rules don't "require disclosure of lay witnesses called in 'rebuttal' because it is not always possible to know in advance, even with extensive pre-trial disclosure, everything which may be

---

[3] In support of his argument that rebuttal evidence need not be disclosed pretrial if it responds to evidence or testimony that couldn't have been reasonably anticipated, husband cites an unpublished case.  Aside from limited exceptions, which don't apply here, we don't consider citations to unpublished decision from this court.  *See State, Dep't of Nat. Res. v. 5 Star Feedlot Inc.*, 2019 COA 162M, ¶ 25 n.9 (noting the court's formal policy prohibiting parties from citing this court's unpublished opinions), *aff'd on other grounds*, 2021 CO 27.

revealed at trial." *Karakehian v. Boyer*, 900 P.2d 1273, 1280 (Colo. App. 1994), *aff'd in part and rev'd in part*, 915 P.2d 1295 (Colo. 1996).  Thus, "[u]nder proper circumstances, if a party has been truly surprised, unendorsed rebuttal testimony is allowed."  *Id.*

¶ 31    A party presenting rebuttal evidence must show that "the evidence is relevant to rebut a specific claim, theory, witness, or other evidence of the adverse party."  *Melssen v. Auto-Owners Ins. Co.*, 2012 COA 102, ¶ 54.  The admission of rebuttal testimony is within the district court's discretion, and we won't disturb the court's decision absent an abuse of discretion.  *In re Marriage of Antuna*, 8 P.3d 589, 593 (Colo. App. 2000).

### 2.    Analysis

¶ 32    Husband argues that the court erred by applying the wrong legal standard for rebuttal witnesses and by restricting the scope of rebuttal testimony.  We aren't persuaded for two reasons.

¶ 33    First, the record supports the court's findings that husband should've anticipated wife's testimony that she contributed by being a homemaker and the primary caretaker of the children.  For instance, the parental responsibilities evaluations and mother's deposition extensively described mother's homemaking duties and

17

her role as the children's caretaker. Also, each party's marital contribution, including homemaking, is a statutory factor the court must consider, and husband was aware that wife's contributions would be the subject of her testimony. *See* § 14-10-113(1)(a). Moreover, husband acknowledges that the centrally disputed issue was whether wife contributed "just as much" to the marriage as he did. Thus, it shouldn't have come as a surprise that wife would testify to her marital contributions and, as the district court put it, husband should have "followed the regular disclosure[ process] versus having to address something specifically in rebuttal."

¶ 34 Second, though the court would've been within its discretion to exclude the entirety of the house manager's testimony under C.R.C.P. 16.2(j), it didn't. Instead, to rebut wife's claimed responsibilities, the house manager was allowed to testify that the manager hired contractors to maintain the house, cooked, looked after the kids part-time, and ran errands for wife. The court limited the house manager's testimony to the scope of her duties — which was well within its discretion — to ensure that husband didn't circumvent the disclosure rules by going beyond the scope of rebuttal. *See Jones v. Feiger, Collison & Killmer*, 903 P.2d 27, 31

(Colo. App. 1994) ("A different ruling by the trial court would have permitted the client to circumvent the dictates of C.R.C.P. 16, which require parties to disclose information concerning persons who 'may' be called to testify."), *rev'd on other grounds*, 926 P.2d 1244 (Colo. 1996).

¶ 35 Thus, the court didn't apply the wrong legal standard, nor did it abuse its discretion by limiting the house manager's testimony.

### C. Appellate Attorney Fees

¶ 36 Wife seeks appellate attorney fees and costs under section 13-17-102(4), C.R.S. 2025, and argues that husband's arguments lack substantial justification, are made in bad faith, and are supported by inaccurate citations. We disagree.

¶ 37 An appeal lacks substantial justification if it is substantially frivolous, groundless, or vexatious. *City of Aurora ex rel. Util. Enter. v. Colo. State Eng'r*, 105 P.3d 595, 618 (Colo. 2005). Attorney fees aren't appropriate when an appellant "makes a good faith presentation of an arguably meritorious legal theory and no determinative Colorado authority exists." *Cruz v. Benine*, 984 P.2d 1173, 1181 (Colo. 1999). "Standards for determining whether an appeal is frivolous should be directed toward penalizing egregious

conduct without deterring a lawyer from vigorously asserting his client's rights." *Mission Denv. Co. v. Pierson*, 674 P.2d 363, 365 (Colo. 1984).

¶ 38    While we disagree with husband's contentions, his arguments weren't "wholly devoid of legal merit or justification," *Tidwell v. Bevan Props., Ltd.*, 262 P.3d 964, 969 (Colo. App. 2011), and his appeal wasn't substantially frivolous, groundless, or vexatious.  We therefore decline wife's request for attorney fees on appeal.

### III.    Disposition

¶ 39    We affirm the district court's judgment.

JUDGE PAWAR and JUDGE SULLIVAN concur.